UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LISA D. WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 1:18cv65 |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB), as provided for in the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for DIB must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2006 (Ex. 10D).

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (Ex. 3D, 7D, 8D, 10D, 11D, 12D) (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. On and before December 31, 2006, the date the claimant was last insured for disability insurance benefits, the claimant did not have any severe mental or physical impairments (20 CFR 404.1522 *et seq*. and 416.922 *et seq*.).

4. Beginning on June 20, 2014, the claimant has had the following severe mental impairments: depression, anxiety, avoidant and dependent personality disorder, and somatic symptom disorder (20 CFR 404.1529(c) and 416.920(c)).

5. Since June 20, 2014, the severity of the claimant's impairments has met the criteria of sections 12.07 and 12.08 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d) and 416.925).

6. The claimant was not disabled prior to June 20, 2014 (20 CFR 404.1520(c) and 416.920(c)) but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(d) and 416.920(d)).

(Tr. 25-30).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on September 25, 2018. On October 29, 2018, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant
> presently unemployed? (2) Is the claimant's impairment "severe"?
> (3) Does the impairment meet or exceed one of a list of specific
> impairments? (4) Is the claimant unable to perform his or her
> former occupation? (5) Is the claimant unable to perform any other
> work within the economy? An affirmative answer leads either to
> the next step or, on steps 3 and 5, to a finding that the claimant is
> disabled. A negative answer at any point, other than step 3, stops
> the inquiry and leads to a determination that the claimant is not
> disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 2 was the determinative inquiry.

Plaintiff was 42 years old as of her date last insured (Tr. 155). She completed college with bachelors degrees in counseling and applied music (Tr. 60). She worked in the past as a tour guide and direct mail coordinator (Tr. 364, 461).

In January 2000, K.D. Petersen, M.D., diagnosed Plaintiff with a large myomatous uterus (Tr. 788). Dr. Petersen conducted an exploratory laparotomy and a multiple myomectomy (Tr. 788). Plaintiff reported having a history of some gastrointestinal dysfunction with irritable bowel syndrome (Tr. 790). In January 2001, Plaintiff reported heavy vaginal bleeding and feeling dizzy (Tr. 797).

The record contains limited medical evidence pertaining to the relevant period at issue – from Plaintiff's alleged disability onset date (March 31, 2001) through her date last insured (June 30, 2006) (Tr. 27-28). In September 2004, Plaintiff told Edward W. Boyts, M.D., that she had intermittent abdominal pain (Tr. 500). A diagnostic test revealed no evidence of an obstruction or a lesion (Tr. 505). Her medication regimen included Zantac, Zoloft, and Bactrim DS (Tr. 500).

In June 2005, Plaintiff complained of having chest pain on a monthly basis (Tr. 498). Plaintiff also indicated that she had depression, and she told Dr. Boyts about "traumatic events in her life" (Tr. 498). On examination, Dr. Boyts noted that Plaintiff was in no apparent distress, and an EKG was normal (Tr. 498). Dr. Boyts further indicated that Plaintiff was not suicidal, but she had some "OCD tendencies" (Tr. 498). He opined that she may have bipolar disorder and suggested changing her medications, but she was "resistant" to doing so (Tr. 498). She believed that her symptoms were physiological in origin, and that medication would not help (Tr. 498). Dr. Boyts noted that Plaintiff "picks and chooses what symptoms she thinks are treatable and which ones are not" (Tr. 498).

In support of remand, Plaintiff argues that the ALJ's Step 2 finding was not supported by substantial evidence. Plaintiff claims that the ALJ should have found her impairments severe and proceeded through the entire five-step analysis.

Plaintiff claims that her doctor diagnosed her depression as chronic and recommended prescription medication, and that the doctor implied that she did not have adequate insight into the nature of the depression and thus was resistant to treatment. Plaintiff claims that this is sufficient explanation for her not obtaining extensive treatment for her depression. Plaintiff also contends that her depression aggravated her uterine fibroid impairment, and that the combined impact of her depression and uterine fibroid impairment contributed to her fatigue.

A "severe" impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Conversely, an impairment or combination of impairments is "not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). A claimant has the burden

5

to prove that her impairment is severe. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (citation omitted). "The diagnosis of an impairment does not alone establish its severity and resulting limitations." *Stanley v. Astrue*, No. 1:11-CV-000248, 2012 WL 1158630, at *11 n.8 (N.D. Ind. Apr. 6, 2012) (citations omitted); *see also Johnson v. Colvin*, No. 2:13-CV-138-PRC, 2014 WL 4722529, at *4 (N.D. Ind. Sept. 22, 2014) ("The mere diagnosis of an impairment does not establish that the impairment affects the individual's ability to perform basic work activities.") (citations omitted).

In the present case, the ALJ considered all of Plaintiff's alleged impairments – singly and in combination – but found that they were not "severe" because they did not cause more than minimal limitations in her ability to perform basic work activities prior to her date last insured (December 31, 2006) (Tr. 26). In making this finding, the ALJ considered all the relevant evidence, including Plaintiff's allegations, statements from her mother, primary care treatment records, and State agency psychological consultants' opinions (Tr. 26-28).

As noted, Plaintiff argues that the ALJ should have found her "chronic depression," "chronic uterine fibroid issues" and fatigue to be "severe at Step 2" and "proceed[ed] through the entire 5-Step analysis for the pre-DLI period" (Pl.'s Br at 9, 17). However, as the Commissioner notes, the vast majority of evidence that Plaintiff cites to in support of her argument post-dates her date last insured by several years (see Pl.'s Br. at 9).

As the ALJ explained, Plaintiff's medically determinable impairments could reasonably have been expected to produce most of the alleged symptoms before December 31, 2006 (Tr. 27). 20 C.F.R. § 404.1529. However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms were not entirely consistent

with the medical evidence and other evidence of record (Tr. 27). "An ALJ is in the best position to determine a witness's truthfulness and forthrightness thus, this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004); *see also Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (reiterating "patently wrong" standard).

As the ALJ noted, Plaintiff saw Dr. Boyts for abdominal pain with nausea, vomiting, and blood in her urine in September 2004, and for chest pain and depression in June 2005 (Tr. 27, 498-500). Additionally, Dr. Peterson treated Plaintiff from the late 1990's until about 2001 for complaints of uterine fibroids, heavy/abnormal vaginal bleeding, and irritable bowel syndrome (Tr. 27, 788-93, 796-808). The ALJ noted that physical examination findings on or before December 31, 2006, were largely within normal limits, with the exception of an enlarged uterus (Tr. 28, 790). Further, there is no evidence in the record from the relevant period (March 31, 2001-December 31, 2006), indicating that Plaintiff was treated for a complaint of irritable bowel symptoms with anything other than Sertraline, Ranitidine, and Metamucil (Tr. 28, 790). The ALJ also found no evidence that Plaintiff had a severe gynecological problem that significantly limited her ability to work from March 31, 2001, through December 31, 2006 (Tr. 28). Nor is there evidence that she experienced severe anemia during that period (Tr. 28). Plaintiff complained of chest pain in June 2005, but, as the ALJ noted, an EKG was normal, and the record demonstrates no evidence of a significant cardiovascular problem during the period at issue before her date last insured (Tr. 28, 498). The ALJ also observed that Plaintiff did not appear to take any medication on a regular and consistent basis through December 31, 2006, other than Flonase, which appeared to have controlled her allergy symptoms (Tr. 28).

With respect to Plaintiff's alleged mental impairments, the ALJ remarked that the record contains no evidence that Plaintiff received outpatient treatment from a mental health specialist (e.g., therapy) or that she was hospitalized on an inpatient basis for any psychiatric reason on or before December 31, 2006 (Tr. 27). Moreover, Plaintiff denied being suicidal during the relevant period (Tr. 27-28).

Plaintiff argues that "[t]he ALJ relied upon the level of mental health treatment to support the conclusion that chronic depression was not severe" (Pl.'s Br. at 16). Plaintiff asserts that the ALJ should not have done so because she allegedly lacked insight into the impairment and was resistant to treatment (Pl.'s Br. at 16). The Commissioner acknowledges that the Seventh Circuit and other courts have stated that "mental illness...may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) (emphasis supplied); *see White v. Comm'r*, 572 F.3d 272, 283 (6th Cir. 2009) ("For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself."). But these cases do not establish a *per se* rule that the mere existence of a mental impairment constitutes an acceptable reason for not obtaining treatment. A claimant still bears the burden of proof.

In the present case, the ALJ fully considered Dr. Boyts's treatment notes, along with the entirety of the record, but found "no evidence . . . that [Plaintiff] exhibited significantly abnormal mental status examination findings during the period from March 31, 2001, through December 31, 2006" (Tr. 27-28). A September 2004 treatment note from Dr. Boyts indicates that Plaintiff was prescribed Zoloft, which, as the ALJ noted, is traditionally used to treat depression (Tr. 27, 500). Less than a year later, in June 2005, Dr. Boyts indicated that Plaintiff was resistant to

8

changing her medications, that she had obsessive compulsive tendencies, and apparently lacked insight into her impairment (Tr. 298).

The ALJ also noted that Plaintiff did not even file for disability benefits until June 20, 2014 (Tr. 27), nearly seven and one-half years after her date last insured and 13 years after her alleged disability onset date. She also worked as a musician and music instructor prior to her date last insured (Tr. 27). The ALJ acknowledged that Plaintiff's earnings did not rise to the level of substantial gainful activity (Tr. 27). 20 C.F.R. § 404.1520(a)(4)(i); see also 20 C.F.R. § 404.1572. But the ALJ found that this activity, when considered with the other evidence of record for the period on/before December 31, 2006, supported a finding that Plaintiff did not have any severe impairments before her date last insured (Tr. 27). It was entirely proper for the ALJ to consider these factors, among others, when evaluating Plaintiff's subjective complaints, as it shows Plaintiff was not as functionally limited as she claimed. *Williams–Overstreet v. Astrue*, 364 F. App'x 271, 277 (7th Cir. 2010).

Clearly, the ALJ properly applied the special technique required for evaluating mental impairments. Under this rubric, an impairment is considered not severe when a claimant has mild or no limitations in understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). In the present case, the ALJ found no documentation in the record from the relevant period demonstrating that Plaintiff had any limitation in these functional areas (Tr. 28). The ALJ's finding in this regard was consistent with the opinion of the State agency psychological consultants (Tr. 28, 158-61, 187-91). Having found no limitations in any of the four functional areas, the ALJ appropriately found no severe mental impairment at step two of the

sequential evaluation (Tr. 28). See 20 C.F.R. § 404.1520a(d).

Although the ALJ concluded that Plaintiff was not disabled prior to her date last insured, he separately found that she became disabled on June 20, 2014, based on evidence demonstrating that she met mental impairment listings as of that date (Tr. 29-30). Such evidence, however, is immaterial to what Plaintiff what must show on this appeal – that she was disabled on or before December 31, 2006. *Shideler v. Astrue*, 688 F.3d 306, 311 (7the Cir. 2012) ("[W]hatever condition the claimant may be in at his hearing, the claimant must establish that he was disabled before the expiration of his insured status . . . to be eligible for disability insurance benefits."); *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011) (the claimant "had social security disability coverage only until the end of 2003; if she was not disabled by then, she cannot obtain benefits even if she is disabled now . . . .").

This court finds that substantial evidence supports the ALJ's finding that Plaintiff had no severe impairment as of December 31, 2006. Thus, the ALJ's decision will be affirmed.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: December 21, 2018.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court